IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TYLER DICKERHOOF<br>3308 Lincoln Street East<br>Canton, OH 44707 | : | CASE NO. _____ |
| | : | |
| | | JUDGE _____ |
| Plaintiff, | : | |
| | | |
| v. | : | |
| | | COMPLAINT:  Products Liability |
| PLATFORM BASKET, s.r.l.<br>Via Montessori, 1 Poviglio<br>Reggio Emilia-Italy | : | Action/Punitive Damages |
| | : | |
| And | : | |
| | | |
| TRACKED LIFTS, LLC<br>c/o Miroslaw Hrycak<br>183 Ruppert Road<br>East Berlin, PA 17316 | : | |
| | : | |
| | : | |
| Defendants. | | |

Now comes Plaintiff, Tyler Dickerhoof, by and through counsel, and for his Complaint, states the following:

**PARTIES, JURISDICTION & VENUE**

1.	At all times mentioned herein, Plaintiff Tyler Dickerhoof (hereinafter referred to as "Plaintiff") resided in the City of Canton, County of Stark and State of Ohio.

2.	Defendant, Platform Basket, s.r.l. (hereinafter referred to as "Defendant Platform Basket") was/is an Italian company with its principal place of business in Reggio Emilia Italy; was transacting business in the State of Ohio, and designs, manufactures, assembles, tests, markets, promotes, advertises, distributes and sells aerial work platforms/baskets/lifts in the United States including the 72 foot Arborist, Model #PB22 10 46KV (hereinafter referred to as the "Subject Lift") involved in the incident which forms the basis of this lawsuit.

3.	At all times relevant herein, Defendant, Tracked Lifts, LLC ((hereinafter referred

to as "Defendant Tracked Lifts") was a corporation duly organized under the laws of the State of Delaware, having its principal place of business located at 3445 Board Road, York, PA 17406; was transacting business in the State of Ohio and designs, manufactures, assembles, repairs, tests, markets, promotes, advertises, distributes, sells and/or modifies aerial work platforms/baskets/lifts, including the Subject Lift.

4. The facts giving rise to these causes of action occurred in the City of Willowick, County of Cuyahoga, and State of Ohio.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332(A) by reason that Plaintiff is a resident of the State of Ohio, Defendants are residents of the State of Pennsylvania/Delaware and the country of Italy, thus creating diversity of citizenship; and the amount in controversy exceeds Seventy-five Thousand Dollars ($75,000.00).

6. The Court has Subject matter jurisdiction and has personal jurisdiction of the out-of-state Defendants pursuant to O.R.C. §2307.382 and Civ. R. 4.3; therefore, jurisdiction is proper. Specifically, the following sub-sections of O.R.C. §2307.382 apply to named Defendants in this action:

> (1) Transacting business in the state. Defendants sell and market its aerial platforms/baskets/lifts, including the Subject Lift, in Ohio and derives significant revenue from Ohio.
>
> (2) Causing tortious injury by an act or omission in this state. Plaintiff suffered severe and permanent injuries as a result of his use of the named Defendants' defective Subject Lift and/or Defendants failed to warn its Ohio customers/operators and the Ohio public at large of other defective products.
>
> (3) Causing injury in this state due to an act or omission outside the state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or

consumed or services rendered in this state. The named Defendants caused the injuries to Plaintiff and regularly does business in Ohio.

7. Venue is proper with this Court pursuant to 28 U.S.C. Section 1397 and Rule 3.8(c) for the United States District Court for the Northern District of Ohio, Eastern Division by reason that the claims set forth herein arose in the City of Willowick, County of Cuyahoga and State of Ohio.

## GENERAL ALLEGATIONS

8. Plaintiff hereby incorporates the proceeding paragraphs, inclusive, of this Complaint, as though fully rewritten herein.

9. Defendant Platform Basket and/or Defendant Tracked Lifts manufactures, distributes, advertises, markets and sells aerial work platforms/baskets/lifts including the Subject Lift - a 72' arborist, to be used for, among other things, tree trimming.

10. Defendant Tracked Lifts further advertises, sells, distributes and markets the 72' arborist under its own label and/or tradename, stating that their goal is to be a leader in providing safe, reliable and versatile equipment.

11. Penn Line Tree Services, Inc. ("Penn Line") is a Pennsylvania corporation which removes brush and tree branches from power lines located in various states including Ohio.

12. Penn Line purchased the Subject Lift from Defendant Tracked Lifts to be used in its course of its business of tree trimming.

13. Plaintiff was employed as a tree trimmer by Penn Line to clear trees and brush from power lines located in the City of Willowick, County of Cuyahoga and State of Ohio.

14. Plaintiff was assigned the Subject Lift purchased by Penn Line in order to perform his job duties.

15. On or about August 10, 2022, Plaintiff entered the Subject Lift and mechanically

elevated it to approximately 50' when the boom cylinder unexpectedly failed, causing the Subject Lift to crash through power lines to the ground, severely and permanently injuring Plaintiff.

## COUNT I – STRICT PRODUCTS LIABILITY AS TO DEFENDANT PLATFORM BASKET AND DEFENDANT TRACKED LIFTS

16. Plaintiff incorporates by reference each of the allegations as if fully set forth herein.

17. At all relevant times, the above-named Defendants were engaged in the business of designing, developing, engineering, manufacturing, assembling, testing, inspecting, marketing, selling and/or distributing aerial platform Lifts, including the Subject Lift, for use by individuals, including tree trimmers, to the general public.

18. Said Defendants manufactured, supplied, warranted, sold, and placed on the market and into the stream of commerce, a defective and unreasonably dangerous product, knowing that the Subject Lift would reach consumers without substantial change in the condition in which it was sold and that, at the time it left Defendants' control, it was defective and in an unreasonably dangerous condition.

19. At the time of the incident described herein, the Subject Lift was in substantially the same condition as on the date of its original manufacture, sale, and delivery.

20. The Subject Lift was defective and unreasonably dangerous for, among others, the following reasons:

    A. Lack of sufficient protection to prevent foreseeable compression and/or contact with its boom cylinder.

    B. The Subject Lift failed to provide adequate and reasonable protection and/or sufficient construction of the boom cylinders exposed to foreseeable compression/contact forces and potential "side loading" during its

operation.

    C.    The design of the Subject Lift and its component parts failed to integrate the various boom cylinder protection components as well as proper storage locations of outrigger pads, in such a way that would reasonably protect the cylinders from foreseeable contact or compression and potential "side loading" during the operation.

    D.    Defendants failed to test or adequately test the Subject Lift to ensure it was reasonably safe and suitable for its intended purpose and to ensure it would provide adequate protection to individuals, including tree trimmers with foreseeable contact/compression with the boom cylinders during its operation.

    E.    Defendants failed to provide adequate warnings and/or proper notice to alert foreseeable users of the Subject Lift regarding the hazardous and dangerous conditions of the Lift despite the fact Defendants knew or should have known of the dangerous and unfit conditions.

    F.    Defendants failed to provide proper and adequate warnings regarding the use and operation of the Subject Lift, including, but not limited to, contact or compression on one of the boom cylinders.

    G.    The Subject Lift was generally defective in its design, manufacture, testing, marketing, assembly and warnings.

21. Defendants are manufacturers as set forth in O.R.C. §2307.71.

22. Pursuant to O.R.C. §2307.73, Defendants are liable to Plaintiff as follows:

    (A)    A manufacturer is Subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, all of the following:

        (1)    Subject to division (B) of this section, the manufacturer's product in question was defective in

manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code, or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code;

(2) A defective aspect of the manufacturer's product in question as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages;

(3) The manufacturer designed, formulated, produced, constructed, created, assembled, or rebuilt the actual product that was the cause of harm for which the claimant seeks to recover compensatory damages.

23. Pursuant to O.R.C. §2307.74, Defendants are liable to Plaintiff because the Subject Lift was defective in manufacture as follows:

(1) A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.

24. Pursuant to O.R.C. §2307.75, the Defendants' Subject Lift was defective in design as follows:

(A) Subject to divisions (D), (E), and (F) of this section, a product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section.

(B) The foreseeable risks associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:

    (1)  The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

    (2)  The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

    (3)  The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

    (4)  The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer;

    (5)  The extent to which that design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

(C)    The benefits associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:

    (1)  The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;

    (2)  The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;

    (3)  The nature and magnitude of any foreseeable risks associated with an alternative design or formulation.

25.    The Subject Defendants Subject Lift was defective pursuant to O.R.C. §2307.76 as follows:

(A)    Subject to divisions (B) and (C) of this section, a product is defective due to inadequate warning or instruction if either of the following applies:

    (1)  It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

> (a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
>
> (b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.
>
> (2) It is defective due to inadequate post-marketing warning or instruction if, at a relevant time after it left the control of its manufacturer, both of the following applied:
>
>> (a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
>>
>> (b) The manufacturer failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

26. The Defendants' Subject Lift was defective pursuant to O.R.C. §2307.77 as follows:

27. A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.

28. A defective aspect of the Subject Lift was the proximate cause of the catastrophic, severe injuries of Plaintiff including, but not limited to, by reason of its defective and unreasonably dangerous design, inadequate testing, misleading marketing and failure to warn foreseeable consumers and users of its unreasonably dangerous condition when it was foreseeable the boom cylinders would fail with any contact o compression with outside forces.

29. Further, prior to designing, selecting, inspecting, testing, manufacturing, assembling, equipping, marketing, distributing, and/or selling the Subject Lift, Defendants knew that alternative boom cylinder designs existed that were safer, more practical and both technologically and economically feasible and it was aware that those alternative designs would have eliminated the defective and unsafe characteristics of the Subject Lift without impairing its usefulness or making it too expensive, yet it failed to make the necessary changes to make its product safe.

30. The Subject Lift was defective and not fit for its intended purpose in its design because it failed to perform as safely as any ordinary consumer would expect when used as intended or used in a reasonably foreseeable manner, and because the risk of danger in the design outweighed any benefits, and because there were alternative, safer designs that were both technologically and economically feasible.

31. The defects in the Subject Lift were present when Defendants placed it into the stream of commerce, and it did not undergo material change, repair or alteration up to and including the time of the aforementioned crash.

32. As a direct and proximate result of the aforementioned design and/or manufacturing defects, the Subject Lift failed to adequately and properly restrain and protect Plaintiff in the Subject crash, causing him to suffer severe, catastrophic and severe bodily injuries.

33. As a direct and proximate result of the aforementioned design and/or

manufacturing defects, the Subject Lift, Plaintiff has suffered emotional and physical harm, pain and suffering and distress.

34. As a direct and proximate result of the aforementioned design and/or manufacturing defects, the Subject Lift, Plaintiff has incurred significant medical bills as well as lost income.

35. As a direct and proximate result of the aforementioned design and/or manufacturing defects, the Subject Lift, Plaintiff has lost the ability to enjoy lift and perform everyday activities.

### COUNT II – NEGLIGENCE AS TO DEFENDANT PLATFORM BASKET AND DEFENDANT TRACKED LIFTS

36. Plaintiff incorporates by reference each of the allegations as set forth fully herein.

37. At all relevant times, Defendants owed to the general public and to Plaintiff a duty to use reasonable care in the design, development, testing, manufacture, assembly, marketing, distribution and sale of the Subject Lift, so as to avoid exposing operators to unnecessary and unreasonable risks.

38. Further, Defendants had a duty to foreseeable occupants to exercise that same degree of care, diligence and skill in designing, testing, inspecting, manufacturing, marketing, and selling the Subject Lift as other similar entities would have exercised.

39. Defendants also had a duty to foreseeable owners and operators of the Subject Lift to exercise the same degree of care, diligence and skill to adequately warn and/or instruct them about the hazards and dangerous conditions related to the use and operation of the Subject Lift and its intended manner of use as other manufacturers and distributors would have exercised.

40. Defendants breached that duty both by acting in a way that a reasonably prudent and careful designer, manufacturer, distributor and seller of aerial platform lifts, including the

Subject Lift, would not act under like circumstances and by failing to take actions that a reasonably careful designer and manufacturer of aerial platform lifts/baskets would take under like circumstances. Defendants breached these duties in at least one or more of the following ways:

      A.    By negligently failing to design the Lift to provide adequate and reasonable protection for operators exposed to foreseeable objects which would have contact with and/or compression to the boom cylinders during its operation.

      B.    By negligently failing to integrate various boom cylinders in the design of the Subject Lift in such a way that would reasonably protect in foreseeable instances of objects coming into contact with and/or compression to the boom cylinder.

      C.    By negligently failing to test or adequately test the Subject Lift to ensure that it was reasonably safe and suitable for its intended and anticipate use and purpose and to ensure that it would provide adequate protection to operators in a foreseeable scenario in which objects (for example, tree branches) would have contact with and/or compression to the boom cylinder.

      D.    By negligently failing to provide adequate warnings and/or proper notice to alert foreseeable operators and consumers, regarding the hazardous and dangerous conditions of the Subject Lift despite the fact that Defendants knew or should have known of the dangerous and unfit conditions.

      E.    By negligently failing to provide adequate warnings regarding the use, objects having contact with and/or compression to

the boom cylinder, the proper storage of the outrigger pads and/or operation of the Subject Lift.

F. By negligently failing to design, manufacture, test, market, assemble and warn about the dangerous condition of the Subject Lift.

41. The Subject Lift was dangerously defective and unsafe for normal and foreseeable use by the public and anticipated tree trimming operators of its unsafe design and defective condition when it left Defendants' hands as set forth above.

42. Defendants negligently and/or knowingly failed to adequately design, test and/or inspect the Subject Lift, and negligently and/or knowingly placed the unreasonably dangerous Subject Lift into the stream of commerce, where it would foreseeably be used by operators such as Plaintiff.

43. As a direct and proximate result of Defendants' negligent acts and/or omissions, in the Subject incident, the Subject Lift failed to adequately and properly protect Plaintiff who suffered severe, catastrophic, and permanent injuries.

44. As a direct and proximate result of Defendants' negligent acts and/or omissions, in the Subject incident, Plaintiff suffered those injuries and damages as fully described in Count I of this Complaint.

**COUNT III – BREACH OF WARRANTY AS TO DEFENDANT PLATFORM BASKET AND DEFENDANT TRACKED LIFTS**

45. Plaintiff incorporates by reference each of the allegations as if fully set forth herein.

46. At all times relevant to this lawsuit, Defendants were engaged in the business of designing, developing, engineering, manufacturing, assembling, testing, warranting, marketing, selling, distributing, and/or otherwise placing products such as the Subject Lift into the stream of

commerce.

47. Defendants warranted to consumers and/or its purchasers, both expressly and impliedly, through its advertisements, marketing, and distribution practices, that the Subject Lift was of merchantable quality and fit for the purposes for which it was intended when used under ordinary circumstances.

48. Defendants at all relevant times were aware that consumers rely upon its marketing, representations and packaging when selecting and purchasing an aerial platform such as the Subject Lift.

49. Because of the defective and unreasonably dangerous design, manufacture, and condition of the Subject Lift, it was neither of merchantable quality nor fit for the ordinary purpose for which it was sold, presenting an unreasonable risk of injury or death to foreseeable operators of the Subject Lift.

50. The defective and unreasonably dangerous condition of the Subject Lift constituted a breach of Defendants' express and implied warranties, and such breach led directly and proximately to the severe, catastrophic, and permanent injuries of Plaintiff.

## COUNT IV – FAILURE TO WARN AS TO DEFENDANT PLATFORM BASKET AND DEFENDANT TRACKED LIFTS

51. Plaintiff incorporates by reference each of the allegations as if fully set forth herein.

52. The Subject Lift was further rendered unreasonably dangerous because an adequate warning regarding the Lift was not provided to consumers, customers and the public regarding the hazards associated with the foreseeable use of the Lift.

53. The Subject Lift possessed the defective and unreasonably dangerous characteristics described above which were the direct and proximate cause of the catastrophic

injuries of Plaintiff, and Defendants failed to use reasonable care to provide an adequate warning of such characteristics and their dangers to foreseeable users and operators of the Lift.

54. At the time of the Subject incident, the Subject Lift was dangerous to an extent beyond that which would be contemplated by the ordinary consumer user of the Lift with the ordinary knowledge common to the community as to the Lift's characteristics.

55. The above acts and/or omissions were a direct and proximate cause of the severe and permanent injuries of Plaintiff.

56. The above acts and/or omissions were a direct and proximate cause of the damages suffered by Plaintiff as fully described in Count I of this Complaint.

## COUNT V - LIABILITY OF SUPPLIER AS TO DEFENDANT TRACKER LIFTS

57. Plaintiff incorporates by reference each of the allegations as if fully set forth herein.

58. Plaintiff states that Ohio Revised Code 2307.78(A) provides:

> (A) Subject to division (B) of this section, a supplier is Subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, that either of the following applies:
>
> (1) The supplier in question was negligent and that, negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages;
>
> (2) The product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages. A supplier is Subject to liability for such a representation and the failure to conform to it even though the supplier did not act fraudulently, recklessly or negligently in making the representation.
>
> (B) A supplier of a product is Subject to liability for compensatory damages based on a product liability claim under *sections 2307.71 to 23077.77 of the Revised Code,* as if it were the manufacturer of that product, if the manufacturer of that product is or would be Subject to liability for compensatory damages based on a

product liability claim under *sections 2307.71 to 23077.77 of the Revised Code* and any of the following applies:

(1) The manufacturer of that product is not Subject to judicial process in this state;

(2) The supplier in question created or furnished a manufacturer with the design or formulation that was used to produce, create, make, construct, assemble, or rebuild that product of a component of that product;

(3) The supplier in question marketed that product under its own label or trade name.

59. Plaintiff states that as fully described in Counts I through III of this Complaint, Defendant Tracked Lifts was negligent in, among things:

A. By negligently failing to provide adequate warnings and/or proper notice to alert foreseeable operators and consumers, regarding the hazardous and dangerous conditions of the Subject Lift despite the fact that Defendants knew or should have known of the dangerous and unfit conditions.

B. By negligently failing to provide adequate warnings regarding the use, objects having contact with and/or compression to the boom cylinder, the proper storage of the outrigger pads and/or operation of the Subject Lift.

C. By negligently failing to design, manufacture, test, market, assemble and warn about the dangerous condition of the Subject Lift.

D. The Subject Lift was dangerously defective and unsafe for normal and foreseeable use by the public and anticipated tree trimming operators of its unsafe design and defective condition when it left Defendants' hands as set forth above.

E. Defendants negligently and/or knowingly failed to Lift into

the stream of commerce, where it adequately design, test and/or inspect the Subject Lift, and negligently and/or knowingly placed the unreasonably dangerous Subject would foreseeably be used by operators such as Plaintiff.

  F. Other acts as fully described in this Complaint.

60. As a direct and proximate result of Defendant Tracked Lifts' negligence, Plaintiff suffered severe and permanent injuries and damages.

61. Plaintiff further states that Defendant Tracked Lifts advertises, sells, distributes and market lifts, including the Subject Lift under its own label and/or tradename, stating that their goal is to be a leader in providing safe, reliable and versatile equipment.

62. Plaintiff further states that the Subject Lift did not conform to the representations made by Defendant Tracked Lifts inasmuch as the Subject Lift was unsafe for use by operators, including Plaintiff.

63. As a direct and proximate result of Defendant Tracked Lifts' negligence, Plaintiff suffered severe and permanent injuries and damages.

64. As a direct and proximate result of Defendant Tracked Lifts' negligence, Plaintiff suffered those damages as fully described in Count I of this Complaint.

65. Plaintiff further states that in the event Defendant Platform Basket, the manufacture, designer, and/or assembler is not subject to judicial process in this State, Defendant Tracked Lifts is subject to liability for Plaintiff's injuries and damages fully described in Count I of this Complaint.

## COUNT VI - PUNITIVE DAMAGES AS TO DEFENDANT PLATFORM BASKET AND DEFENDANT TRACKED LIFTS

66. Plaintiff incorporates by reference each of the allegations as if fully set forth herein.

67. The above-named Defendants designed, developed, manufactured, marketed, assembled, tested or failed to test, distributed, sold and placed into the stream of commerce the Subject Lift, and it knew the Subject Lift was not reasonably safe when being used in a foreseeable manner. Specifically, it knew the Subject Lift was designed in such a manner that it would fail to adequately restrain and protect operators in foreseeable operations, including Plaintiff, despite alternative designs that were available for use.

68. Defendants' actions, conduct and/or omissions in the design, manufacture, assembly, distribution and sale of the Subject Lift as set forth above demonstrate that it acted with actual malice, gross negligence that evidences a willful, wanton or reckless disregard for the safety of others and/or that it committed actual fraud and thus warrants the imposition of punitive damages in this case in an amount to be set by a jury necessary to punish or deter Defendants and others and considering all reasonable factors under law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff demands:

1. That proper service be issued and served upon the Defendants;

2. That this cause be tried before a jury;

3. That a sum of monetary compensation in excess of Seventy Five Thousand Dollars ($75,000.00) be awarded that will fully and reasonably compensate the Plaintiff for all the injuries, damages and loss which have been endured and will be endured in the future;

4. That punitive damages be awarded to punish Defendants for its reckless and/or willful conduct as described above, in amounts sufficient to punish and deter such conduct by the Defendants and others in the future; and

5. That the Court grant the Plaintiff such further relief to which he may be entitled.

Respectfully submitted,


By: /s/ Stacie L. Roth
    Stacie L. Roth (#0071230)
    Andrew R. Burton (#0100996)
    Schulman, Roth & Associates
    The Carnegie Building
    236 Third Street, SW
    Canton, OH 44702
    Telephone: (330) 456-4400
    Fax: (330) 456-3641
    sroth@lawyersonyourside.com
    aburton@lawyersonyourside.com
    Counsel for Plaintiff


## REQUEST FOR SERVICE

**TO THE CLERK**:

Please serve the Defendant(s) via certified mail, return receipt requested, addressee only, at the addresses listed on the caption of this Complaint.


By: /s/ Stacie L. Roth